UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SUBPOENA TO NON-PARTIES ENTRILOGY, LLC AND TINA HUSTON IN THE MATTER<br><br>HID GLOBAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>VECTOR FLOW, INC., et al.,<br>Defendants. | Case No.  22-mc-80134-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH SUBPOENA**<br><br>Re: Dkt. No. 1 |

enTrilogy, LLC ("enTrilogy") and Tina Huston (collectively, "Non-Parties") move to quash subpoenas for documents served by HID Global Corporation ("HID") in connection with the action *HID Global Corp. v. Vector Flow, Inc.*, 21-cv-1769-VAC-JLH (consolidated) in the District of Delaware ("Delaware action").  The Court held a hearing on the motion on July 5, 2022.  As explained below, the Court grants in part and denies in part Non-Parties' motion to quash.

I.      **BACKGROUND**

HID describes itself as "a worldwide leader in trusted identity solutions." Dkt. No. 10 at 2. It provides security products for controlling physical access, like ID cards and readers for opening doors, as well as software products that control access to physical and digital assets. *Id.* at 2-3.  In the Delaware action, HID alleges that Vector Flow, Inc. ("Vector Flow") infringes an HID patent and has misappropriated HID's trade secrets.  Dkt. No. 1-3, Ex. A.  HID also filed a separate action in the Southern District of New York alleging that three of its former employees, Ajay Jain, Vikrant Ghai, and Shailendra Sharma, breached their contractual non-competition and non-

solicitation obligations to HID when they formed Vector Flow and that they also misappropriated HID's trade secrets. Dkt. No. 1-3, Ex. B. This latter action has been consolidated with the Delaware action. Dkt. No. 1 at 6.[1]

enTrilogy describes itself as "an independent consulting firm specializing in physical security technologies," including "identity and access management, physical access controls and surveillance." Dkt. No. 1-2 ¶ 2. Ms. Huston is the sole and managing member of enTrilogy. *Id.* She founded enTrilogy in August 2018 after leaving her employment with HID and its affiliate, Quantum Secure. *Id.* At some point, Ms. Huston also became an employee of Vector Flow, now serving as its Vice President for Customer Experience. *Id.* ¶ 2.

In October 2018, enTrilogy and HID/Quantum Secure entered into a Software/Services Reseller Agreement pursuant to which enTrilogy agreed to act as a reseller of HID's software and services. *Id.* ¶ 4. During that time, enTrilogy also served as reseller, representative, or independent consultant for other companies. *Id.*

On April 29, 2022, HID served virtually identical subpoenas on both Non-Parties demanding production of documents responsive to the following requests:

> RFP No. 1: All documents and things relating to communications between you [or enTrilogy] and Vector Flow that pertain to HID or the HID SAFE software.
>
> RFP No. 2: All documents and things relating to communications between you [or enTrilogy] and any third party relating to the founding of Vector Flow or the development of any of Vector Flow's technologies or products.
>
> RFP No. 3: All documents and things relating to the research, development, design, structure, function, operation, or implementation of any of Vector Flow's technologies or products.
>
> RFP No. 4: All documents and things relating to your [or enTrilogy's] access to any of HID's technologies or products, including but not limited to the HID SAFE software, and including but not limited to access to Executable Code or operating software, through any means other than as pursuant to the Quantum Secure Software/Services Reseller Agreement dated September 20, 2018.

---

[1] References in this order to the "Delaware action" include both the original action against Vector Flow and the action against the individual defendants that has been consolidated with it. The Court takes judicial notice of the complaints against Vector Flow and the individual defendants in the Delaware action.

2

RFP No. 5: All documents and things relating to your [or enTrilogy's] access to any of HID's Source Code.

RFP No. 6: All documents and things relating to your [or enTrilogy's] transmission or display of any of HID's technologies or products, including but not limited to the HID SAFE software, and including but not limited to transmission of HID's Source Code, Executable Code, or operating software to anyone associated with Vector Flow or Innominds.

RFP No. 7: All documents and things relating to access by anyone other than you[, enTrilogy,] or HID to any of HID's technologies or products, including but not limited to the HID SAFE software, and including but not limited to access to HID's Source Code, Executable Code, or operating software.

RFP No. 8: All documents and things relating to your [or enTrilogy's] access to any HID Confidential Information through any means other than as pursuant to the Quantum Secure Software/Services Reseller Agreement dated September 20, 2018.

RFP No. 9: All documents and things relating to your [or enTrilogy's] transmission of any HID Confidential Information.

RFP No. 10: All documents and things relating to access to, or transmission of any HID Confidential information by anyone other than you[, enTrilogy,] or HID.

RFP No. 11: All documents and things relating to communications with HID's customers, potential customers, consumers, and/or end users relating to any of Vector Flow's technologies or products, including without limitation complaints, help requests, comments, and communications relating to technical support.

RFP No. 12: Documents and things sufficient to show all access to any instance of the HID SAFE software, including access dates, access times, the persons who accessed the software, user accounts used to access the software, any domains from which the software was accessed, and any IP addresses from which the software was accessed.

RFP No. 13: Documents and things relating to provision of access to any instance of the HID SAFE software to any person associated with Vector Flow or Innominds, including, but not limited to, all documents and things relating to discussions of access and provisioning of user accounts or credentials that would enable access to any instance of the HID SAFE software.

RFP No. 14: Documents and things sufficient to show any contractual obligations between [you] [enTrilogy] and Vector Flow.

RFP No. 15: Documents and things sufficient to show any payments from Vector Flow to enTrilogy and any consideration therefor.

RFP No. 16: All documents and things relating to communications between you, or any person communicating on your behalf, and Vector Flow, Jain, Ghai, or Sharma, or any person communicating on Vector Flow's, Jain's, Ghai's, or Sharma's behalf, regarding this litigation.

RFP No. 17: All documents and things relating to communications between you, or any person communicating on your behalf, and Vector Flow, Jain, Ghai, or Sharma, or any person communicating on Vector Flow's, Jain's, Ghai's, or Sharma's behalf, regarding the enTrilogy litigation.

Dkt. No. 1-2 ¶ 12; Dkt. No. 1, Exs. 1, 2. The subpoenas encompass the period from approximately August 2018 to the present. Dkt. No. 16 at 33:21-34:6.

Non-Parties move to quash the subpoenas in their entirety.

## II. LEGAL STANDARD

The scope of discovery available by document subpoena under Rule 45 of the Federal Rules of Civil Procedure is the same as the scope of discovery available under Rule 34. *See* Fed. R. Civ. P. 45, advisory committee notes to 1970 amendment (noting that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"). A party may obtain discovery of any non-privileged matter that is relevant to a party's claim or defense in the action, so long as that discovery is also proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). However, Rule 45 also requires "[a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and instructs that "the court for the district where compliance is required must quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1)(A), (3)(A). Additionally, Rule 26 provides that the court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## III. DISCUSSION

Non-Parties argue that the subpoenas should be quashed because responding to them would impose an undue burden and would require them to disclose their own confidential commercial information, including information confidential to third parties. *See* Dkt. No. 1 at 11-15. HID argues this dispute should be transferred to the District of Delaware, and otherwise argues that it is entitled to full compliance with the subpoenas. The Court first addresses the question of transfer, and then turns to the merits of the motion.

4

**A.     HID's Request to Transfer Motion to District of Delaware**

HID argues that Non-Parties' motion to quash should be transferred to the District of Delaware pursuant to Rule 45(f) because the Delaware court "has already rejected some of movants' arguments," including that the subpoenas seek documents that are not relevant.  Dkt. No. 10 at 6.  Non-Parties oppose transfer.  Dkt. No. 11 at 2-3.

Rule 45(f) provides that the court where compliance with a subpoena is required may transfer a motion to the court that issued the subpoena "if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  Non-Parties do not consent to transfer this motion to the District of Delaware, and no exceptional circumstances support transfer.  The Delaware court has not decided any matter bearing on the merits of the motion.  Contrary to HID's assertion, the Delaware court did not decide that the subpoenas seek relevant documents; it merely acknowledged the propriety of the reasons HID gave for "why the requested discovery might be relevant," while also observing that Non-Parties "ha[ve] objections that the discovery requested by the subpoenas is overly broad or unduly burdensome."  Dkt. No. 10-2 at ECF 16:6-9.  The Delaware court appears to have contemplated that Non-Parties' objections to HID's subpoenas would be resolved by this Court.  *Id.* at ECF 16:9-12.

**B.     Non-Parties' Objections to HID's Discovery**

HID seeks document discovery from Non-Parties in support of its trade secret misappropriation and breach of contract claims against the defendants in the Delaware action; it does not seek discovery in support of its patent infringement claim.  Dkt. No. 10 at 3; Dkt. No. 16 at 28:13-19.  As a general matter, Non-Parties do not dispute that the subpoenas seek documents that are relevant to these claims.  Instead, they argue that the subpoenas are unduly burdensome on several grounds.  Dkt. No. 1 (discussing grounds for motion to quash); Dkt. No. 11 (same); Dkt. No. 16 at 8:2-18.  However, Non-Parties arguments about the burdens associated with these requests suggest that they object to some requests as overly broad—*i.e.*, encompassing irrelevant information as well as relevant information.[2]  *See* Dkt. No. 1 at 12 (criticizing HID's Requests 1-3

---

[2] Non-Parties did not include their written objections to the HID's subpoenas in the materials filed with their motion to quash.

and 11 as requiring production of documents unrelated to HID and its claims); *see also* Dkt. No. 16 at 16:22-25. The Court considers each of the grounds Non-Parties raise in their motion to quash.

### 1. Overlap with discovery sought in state court action

Non-Parties argue that they should not be required to respond to HID's subpoenas in the Delaware action because HID simultaneously seeks access to some of the same information in a state court action HID filed against enTrilogy and Ms. Huston for alleged breach of an audit provision in the Quantum Secure Software/Services Reseller Agreement. *See* Dkt. No. 1-3. However, the pendency of the state court action and the discovery or relief that HID may seek in that case have no bearing on the Court's evaluation of whether the subpoenas in the Delaware action should be quashed or modified. To the extent Non-Parties produce discovery to HID in the state court action that overlaps with permissible discovery called for by HID's subpoenas in the Delaware action, Non-Parties suffer no additional burden if required to provide access to that same discovery in responding to the subpoenas. Further, if HID is entitled to obtain documents responsive to its subpoenas in the Delaware action, it does not matter that it was unsuccessful in its efforts to obtain the same discovery in the state court action.

### 2. Discovery available from defendants

Several of HID's requests ask for documents that appear to be equally available from Vector Flow and/or the individual defendants in the Delaware action. During the hearing, counsel for HID stated that HID served document requests on the parties in the Delaware action that encompass some of the same documents HID seeks from Non-Parties here, and that party-discovery is in progress in the Delaware action. *See* Dkt. No. 16 at 41:17-45:24.

The Court has reviewed the document requests in the subpoenas and finds that the following requests encompass documents that should be equally available from the defendants because they concern communications, contracts, or payments between Non-Parties *and the defendants*: RFP Nos. 1 and 14-17. HID should endeavor in the first instance to obtain this discovery from the defendants in the Delaware action before seeking documents responsive to these requests from Non-Parties. *See, e.g., Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575,

577 (N.D. Cal. 2007) (quashing subpoena under Rules 26 and 45 where "the vast majority of the discovery sought from [non-party] is discovery obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants."). HID has not shown that such discovery is unavailable from the defendants in the Delaware action.

For this reason, the Court quashes HID's subpoenas to the extent they seek documents responsive to RFP Nos. 1 and 14-17.

### 3. Access to and disclosure of HID confidential information

Several of HID's remaining document requests ask for "all documents and things relating to" Non-Parties' access to HID confidential information (including the HID SAFE source code and executable code) and their disclosure of such information to Vector Flow, Innominds,[3] or the individual defendants. These include RFP Nos. 4-10, 12, and 13. Ms. Huston testifies in her declaration that she "told HID's counsel from the beginning that neither [she] nor anyone else at enTrilogy ever had any access to any HID source code."[4] Dkt. No. 1-2 ¶ 7. However, Ms. Huston does not assert that she or others at enTrilogy had no access to any other HID confidential information that might have assisted Vector Flow and the individual defendants in starting a competing company or launching a competing product. In any event, Non-Parties do not dispute that documents reflecting their access to or disclosure of HID confidential information to Vector Flow, Innominds, and/or the individual defendants are relevant to HID's claims.

However, in the circumstances presented, these requests are overbroad and therefore unduly burdensome to the extent they seek "all documents and things relating to" access and disclosure (which is the case for all but RFP No. 12). *See, e.g., Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003) (subpoena requesting "all documents" relating to certain people, products, and procedures imposed an undue burden); *In re Multiflora Int'l Ltd.*, No. 20-MC-80193-DMR, 2021 WL 2662122, at *4 (N.D. Cal. June 29, 2021) (proposed subpoena

---

[3] HID advised the Court during the hearing that Innominds is a company that HID believes worked with Vector Flow to develop its competing product. Dkt. No. 16 at 28:10-12.

[4] Ms. Huston's attestation that "she told HID's counsel" she had no access to the HID SAFE source code is not an assertion that she, in fact, had no access to the source code.

seeking, among other things, "all documents relating to" specified subject matter was "overbroad and burdensome"); *Spectrum Scis., LLC v. Celestron Acquisition, LLC*, No. 20-CV-03642 EJD (VKD), 2020 WL 7352644, at *2 (N.D. Cal. Dec. 15, 2020) ("As a general matter, the formulation "all documents relating to . . . " invites dispute and is generally disfavored precisely because the boundaries of the request are difficult to identify.") For this reason, the Court modifies RFP Nos. 4-10 and 13 so that they are limited to "documents and things constituting or reflecting access to" HID confidential information by Non-Parties and "documents and things constituting or reflecting transmission or disclosure of" HID confidential information to Vector Flow, Innominds, and/or the individual defendants. Apart from the phrase "all documents and things relating to," the Court does not otherwise modify the subject matter of these document requests.

### 4. Documents relating to Vector Flow and its technologies and products

RFP Nos. 2 and 3 ask Non-Parties to produce "all documents and things relating to the research, development, design, structure, function, or implementation of any of Vector Flow's technologies or products," and "all documents and things relating to" communications with others about Vector Flow's "founding" and the development of its "technologies or products." RFP No. 11 asks Non-Parties to produce "all documents and things relating to" communications with any customer or potential customer "relating to any of Vector Flow's technologies or products." Non-Parties object that these requests are not limited to documents relevant to HID's trade secret and breach of contract claims but encompass essentially all documents about Vector Flow and its technologies or products and any communications with any customer or potential customer about Vector Flow's technologies or products.

The Court agrees with Non-Parties that RFP Nos. 2, 3, and 11 are overbroad and unduly burdensome, as they encompass matters well beyond the scope of HID's allegations of trade secret misappropriation and breach of contract by the defendants in the Delaware action. For this reason, the Court quashes HID's subpoenas to the extent they seek documents responsive to RFP Nos. 2, 3, and 11.

### 5. Non-Parties' confidential information

Non-Parties object that some of the documents responsive to HID's subpoenas will require

the disclosure of information that is confidential to third parties and/or enTrilogy. *See* Dkt. No. 1 at 15. The Court is advised that a protective order has been entered in the Delaware action and that its protections may be invoked by Non-Parties to address their concerns about disclosure of their confidential information to HID or the public. However, it is not clear whether this protective order addresses Non-Parties' argument that because they owe confidentiality obligations to third parties, they may not disclose certain materials, even pursuant to a protective order, without breaching those obligations.

To the extent Non-Parties contend that a confidentiality obligation to a third party prevents them from producing a document that would otherwise be responsive to a document request that the Court has not quashed, Non-Parties must seek the third party's permission to make the production (with appropriate protections of a protective order, if warranted), and if permission cannot be obtained, Non-Parties must confer with HID to attempt to resolve the matter. If unsuccessful, the parties may bring the dispute to the Court's attention using the expedited discovery procedures described in the Court's Standing Order for Civil Cases, section 4. *See* https://cand.uscourts.gov/vkd-standing-order-for-civil-cases-april-2022/.

Non-Parties may redact any personally identifiable information of customer employees or contractors before producing responsive documents to HID.

### 6. Unreasonable expense

To the extent Non-Parties contend that *any* search for responsive documents would be unduly burdensome, the Court finds their arguments unpersuasive. The Court understands that the documents in question are maintained as electronically stored information. These materials may be collected and filtered using search terms and other techniques according to well-known e-discovery practices. The Court is not persuaded that a search for responsive documents will require the expenditure of more than a thousand hours or more than $200,000, and Non-Parties have provided insufficient support for such an estimate. *See* Dkt. No. 1 at 12.

### IV. CONCLUSION

For the reasons explained above, the Court grants Non-Parties' motion to quash the subpoenas with respect to RFP Nos. 1-3, 11, and 14-17. The Court denies Non-Parties' motion to

9

1  quash RFP Nos. 4-10, 12, and 13, but modifies RFP Nos. 4-10 and 13, as indicated above.

2      Non-Parties must produce documents responsive to the subpoenas, as provided in this
3  order, within 60 days, or by such other date on which the parties may agree.

4      As this order disposes of the motion to quash, the Clerk is directed to close this matter.
5  The closure of this matter will not prevent parties from seeking further relief from this Court, as
6  discussed in this order.

7  **IT IS SO ORDERED.**

8  Dated: August 8, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge